UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| CLARENCE R. SANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV407-177 |
| | ) | |
| MICHAEL WILLIAMS, *Correctional Officer II, Coastal State Prison*, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

On November 21, 2007, Clarence R. Sanks, then incarcerated at Rogers State Prison,[1] filed a complaint pursuant to 42 U.S.C. § 1983 alleging that Michael Williams, a correctional officer at Coastal State Prison, used excessive force on him during a cell search, causing a fracture to his nose. (Doc. 1 at 5.) He further alleged that after the beating he was taken to a nurse, who failed to examine him or give him pain medication for his broken nose. (Id.)

---

[1] Sanks' claims are based on actions that he alleges occurred in May 2007, while he was confined at Coastal State Prison. (Doc. 1 at 8.) By the time he filed his complaint, however, Sanks had been transferred to Rogers State Prison. (Id. at 3.) He has since been released from incarceration. (Doc. 27.)

Following an initial screening of Brown's complaint pursuant to 28 U.S.C. § 1915A, the Court dismissed the nurse but ordered service on Williams. (Docs. 10, 12.) Williams was served with a copy of Sanks' complaint on January 24, 2008. (Doc. 15.)

On March 18, 2008, Williams filed an answer to the complaint, (doc. 18), and on September 4, 2008, he filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 31.) Included with his motion were a supporting brief, a statement of undisputed material facts, and a number of exhibits, including a deposition of Sanks. (Docs. 31, 33.) Along with the defendant's motion for summary judgment, the Clerk of Court issued a notice to Sanks warning him of the consequences that might follow if he failed to file a timely response to the defendant's motion. (Doc. 34.) Among those potential consequences were: (1) the entry of final judgment for the defendant, and (2) the assumption that Sanks does not dispute the facts set forth in Williams' statement of undisputed material facts. (Id.) The Clerk's notice also informed Sanks of the September 29, 2008 response deadline. (Id.)

Despite the clear warnings in the Clerk's notice, Sanks has failed to respond to Williams' motion for summary judgment. In fact, he has failed to file anything with the Court since the filing of that motion. As a result, all material facts set forth in defendants' statement of uncontested material facts will be deemed admitted for purposes of this summary judgment motion, as Sanks did not controvert them by filing his own statement of disputed facts. L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party."); see Cockrell v. Sparks, 510 F.3d 1307, 1310 n.2 (11th Cir. 2007). For the reasons set forth below, Williams' motion for summary judgment should be **GRANTED**, and Sanks' case should be **DISMISSED**.

I.  **BACKGROUND**

Sanks originally alleged that on the morning of May 10, 2007, during a search of his cell, Correctional Officer Williams began choking him and punching him in his face, which busted his lip and

exacerbated a pre-existing fracture to his nose. (Doc. 1 at 5, 8.) Sanks' complaint does not describe any events that potentially provoked the attack. He simply alleges that Williams used excessive force in violation of his Eighth Amendment rights. (Id. at 8.) He seeks to recover $350,000 in compensatory and punitive damages for the suffering he has experienced and requests an injunction "ordering defendant[] to be better trained in [his] position toward inmates and for the state's department of corrections [to] periodically monitor officers and staff in these issues at hand." (Id. at 9.)

In his statement of material facts and brief in support of summary judgment, Williams addresses two versions of the events: he both describes the events as he claims they occurred, providing a sworn affidavit in support, and he also presents and analyzes the facts as Sanks described them during his deposition. (Doc. 31.) Under either version of the facts, Williams argues, he is entitled to summary judgment. (Id.)

The parties agree that on the morning of May 10, 2007, another officer had confiscated contraband from Sanks' room and

had thrown it into the garbage can in a common area. (Doc. 31, Statement of Material Facts at 2.) Sometime later, Officer Williams observed Sanks removing what he believed to be the confiscated items from the trash can. (Id.) He ordered him to stop, but Sanks disobeyed him and ran to his cell. (Id.) During his deposition, however, Sanks claimed that he had gone into the common area to retrieve two blank grievance forms, which he had placed in his pocket along with a towel, and that when Williams ordered him to stop, he had complied. (Doc. 31; Sanks Depo. at 42.) Sanks further claimed that when Williams asked him what was in his pocket, he explained that he had grievance forms and a towel, and that he then proceeded on to his cell, where he began drafting his grievances. (Id. at 42-43.) The parties also agree that Williams followed Sanks back to his cell, where he began searching the area for contraband. (Doc. 31, Statement of Material Facts at 2; Sanks Depo. at 43-44.) A crowd of inmate onlookers began to gather in the doorway of Sanks' cell. (Id., Statement of Material Facts at 5; Sanks Depo. at 43.)) It is also agreed that after Sanks saw Williams pick up a box of crackers, he stood from his chair and lunged

toward Williams in an attempt to snatch the box away.² (Id., Statement of Material Facts at 3; Sanks Depo. at 44-45.) According to Williams, he told Sanks to stand back, placed his hand on Sanks' chest in order to push him away, and that Sanks continued to resist him by swinging and scratching at him. (Id., Statement of Material Facts at 3.) Sanks, however, claims that Williams immediately gripped his neck and began choking him as he directed him towards his bed. (Id.; Sanks Depo. at 45.) Sanks testified that by grabbing at Williams' hand he was only trying to loosen Williams' grip on his neck and that all the while he was asking Williams why he was choking him. (Id.) Both men agree that in response to Sanks' resistance, Williams punched him. (Doc. 31, Statement of Material Facts at 4; Sanks Depo. at 45.) Williams states that he only punched Sanks once, while Sanks stated at his deposition that Williams punched him in the face two times—once in the nose and once in the jaw. Statement of Material Facts at 4; Sanks Depo. at 46.) Both men state that the use of force ceased when Sanks stopped resisting, and that after Sanks fell to the floor, Williams

---

² Sanks claims that Williams was waving the cracker box in his face at the time that he reached for it. (Sanks Depo. at 44.)

called for assistance and Sanks was taken for medical care. (Statement of Material Facts at 4; Sanks Depo. at 67, 69-70.) Sanks alleges that the blow to his nose exacerbated a facial fracture he had suffered in January 2007, when he was attacked by other inmates, and that now he has trouble breathing because his nose did not heal properly. (Sanks Depo. at 92-93, 105.)

According to the sworn affidavit of Dr. Eric Fogam, the medical director at Coastal State Prison who personally treated Sanks, Sanks suffered no broken bones from the incident with Williams. (Doc. 33, Fogam Aff. 4 at ¶ 11.) He further states that Sanks suffered only redness and tenderness to his left cheek and some mild swelling, all of which was treated with Motrin and ice packs. (Id., Fogam Aff. 3 at ¶ 10.)

## II. LEGAL ANALYSIS

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to enter summary judgment where the record, taken as a whole, establishes "that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." "An issue of fact is 'material' if it might affect the outcome of the case under the governing law. . . . It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1518 (11th Cir. 1990) (citations omitted).

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for trial." Tidmore v. BP Oil Co./Gulf Prods. Div., 932 F.2d 1384, 1387 (11th Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). The Court must consider the entire record in the case, not just those portions of the record which have been singled out for attention by the parties. Baker, 903 F.2d at 1519.

Williams presents three distinct grounds for summary judgment: (1) that his actions did not violate the Eighth Amendment, (2) that he is protected by qualified immunity, and; (3) that the injunctive relief Sanks seeks regarding how Williams performs his job cannot be granted because Sanks is no longer incarcerated at the facility where Williams is employed. (Doc. 31.)

As the Court finds reason to grant summary judgment on the first ground, the last two grounds need not be addressed.

### B. Legal Standard for Excessive Force

Allegations of excessive force occurring post-conviction must be reviewed under the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 318 (1986). While a prison guard is entitled to use force against an inmate in order to maintain or restore discipline, a guard violates the Eighth Amendment's prohibition of cruel and unusual punishment when he employs force maliciously or sadistically for the very purpose of causing harm. Hudson v. McMillian, 503 U.S. 1, 9 (1992); Clark v. Argutto, 221 F. App'x 819, 824-825 (11th Cir. 2007); Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005). Thus, whenever a prison official stands accused of using excessive physical force, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7; Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002). To determine whether an application of force was

applied maliciously and sadistically to cause harm the court must look at several factors including "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response." Hudson, 503 U.S. at 7 (internal citations omitted). Courts may also consider the extent of the injury suffered as an additional indicator of whether the force used was appropriate under the circumstances. Id. at 7, 9-10.

### C. Merits of Williams' Motion

As explained above, plaintiff's excessive force claim depends upon whether defendant's use of force was instituted "maliciously and sadistically for the very purpose of causing harm," a determination which is guided by the five factors outlined in Hudson. 503 U.S. at 7, 9-10. Courts are also encouraged to give deference to the quick judgment calls that prison officials are often required to make. Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) ("[W]e also must give 'a wide range of deference to

prison officials acting to preserve discipline and security,' including when considering 'decisions made at the scene of a disturbance.'") (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990)). Such considerations persuade the Court that the record here does not create a factual issue regarding malicious or sadistic intent.

It is clear that Officer Williams was entitled to use some force in this instance. In light of Sanks' physically aggressive interference with Williams' search of his cell, as well as the crowd of inmates that had gathered at the cell's only exit and the fact that Williams was the only officer in the area at the time, Williams had a legitimate need to quickly quell any potential escalation of violence. See Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008) (finding that, "under the first factor, the need for the use of force was established by the undisputed evidence that the inmate created a disturbance") (citing Bennett, 898 F.2d at 1533); Brown v. Felton, 2008 WL 3891273, at *4 (S.D. Fla. Aug. 21, 2008) ("Defendant [corrections officer] reasonably perceived [the inmate's] aggressive stance and lunge as precursors to physical violence. To maintain

order, defendant needed to prevent an attack against [himself and another officer]. Clearly then, the use of force was required.").

Next, Williams' use of his open-hand to push away his aggressor employed only a minimal amount of force in light of the situation. See Cockrell, 510 F.3d at 1311 ("The amount of force conveyed by an open-handed push or shove is as near to the minimum amount as an officer can employ, and it is not disproportionate to the need to restore order when dealing with a . . . boisterous inmate."). When Sanks further resisted Williams by clawing and punching at Williams' hand, Williams was justified in using a single punch to regain control of the situation.[3] See Olson

---

[3] Although Sanks failed to provide a statement of material facts or any argument in response to Williams' motion for summary judgment, Williams' statement of material facts also describes and cites Sanks' version of the events. The Court agrees with Williams' argument that even if Sanks' version of the events were taken as true, Williams would still be entitled to summary judgment as Sanks' version of the facts could not support a claim of excessive force. The only two points at which Sanks' version of the events materially varies from Williams' version is where Sanks claims Williams had his hands gripped around Sanks' neck and was choking him when he was pushing him away, and where Sanks claims that Williams punched him in the face one additional time. As both men agree that Williams ceased his use of force immediately upon Sanks' cessation of his physical resistance, Williams was not acting maliciously or sadistically, but was using the force necessary to regain control of the violent situation. See Bennett, 898 F.2d at 1531, 1534 (grabbing an inmate by the throat and pushing him against the bars of his cell during an inmate count is not disproportionate to the need to stop the inmate from shouting and demanding to be let out). Thus, even if Sanks' claims were taken

v. Coleman, 804 F. Supp. 148, 150 (D. Kan. 1992) ("[A] single blow [to the head] fails to constitute excessive use of force" as it is not "'of a sort repugnant to the conscience of mankind'") (quoting Hudson, 503 U.S. at 10); Richards v. Dunbar, 798 F.2d 471, 1986 WL 17217, at *2-3 (6th Cir. 1986) (not improper for district court to hold that officer's force was not excessive where arrestee continued to physically resist officers until one officer hit arrestee on the head either with a pistol or with his fist where his ring was, causing arrestee to bleed profusely).[4]  The cases where an officer's use of force has been deemed excessive have involved far more egregious conduct than that at issue here. See, e.g., Hudson, 503 U.S. at 12 (force deemed excessive where one corrections officer punched

---

as true, the Court's reasoning, applied above, would support a conclusion that the force used was not excessive and that Williams' summary judgment motion should be granted.

[4] The inquiry that applies to an arrestee's claim of excessive force is the same as the inquiry when such a claim is made by a convicted inmate. Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.") (citing Bell v. Wolfish, 441 U.S. 520, 535 & n. 16 (1979); Hale v. Tallapoosa County, 50 F.3d 1579, 1582 n. 4 (11th Cir.1995); Jordan v. Doe, 38 F.3d 1559, 1564-65 (11th Cir.1994)).

inmate in the mouth, eyes, chest and stomach while another officer kicked and punched him from behind); Gomez v. Chandler, 163 F.3d 921, 924-25 (5th Cir. 1999) (force could be found excessive where inmate was "allegedly knocked down so his head struck the concrete floor, his face was then scraped against the floor, he was repeatedly punched in the face by two officers using their fists for about five minutes and then a third officer kicked [inmate] in the face and head, after which one of the two officers continued to hit [inmate] with his fists."); Thomas v. Stalter, 20 F.3d 298, 301-02 (7th Cir. 1994) (force could be found excessive where inmate was held down by at least nine other guards when one guard punched him in the mouth and told him to "shut up"). Here, Williams used only the force necessary—be it one or two punches—to halt Sanks' physical resistance, and when Sanks stopped resisting, Williams ceased his use of force. The force used, therefore, was not excessive in light of the situation.

Additionally, the Court finds that Williams reasonably perceived that the situation presented a substantial threat to his own security as well as the security of the institution. Sanks was

15

much bigger (in both weight and height) than Williams. (Doc. 31, Statement of Material Facts at 5; Sanks Depo. at 90.) Moreover, as described above, there were no other guards on the scene during the altercation; in fact, Williams was not able to call for assistance until after he had subdued Sanks. (Williams Aff. 4 at ¶ 13; 5 at ¶¶ 15-16.) The danger of Williams being the lone guard on the scene was elevated due to the fact that several inmates had gathered and were obstructing the cell's only doorway, not only making it difficult for Williams to flee if need be, but also presenting an opportunity for inmates to gang up on Williams and overtake him and, perhaps, the larger area in which they were housed. (Id. at ¶¶ 13-15.) These were reasonable threats perceived by Williams, and they support his decision to use physical force to subdue Sanks.

Finally, the extent of Sanks' injury supports the conclusion that the force used was appropriate under the circumstances. Dr. Fogam, who treated Sanks both before and after the incident at issue, explains in his affidavit that Sanks was observed immediately following the incident as having only "redness and tenderness to his left cheek and mild swelling" and that Sanks was given

"Motrin, a non-prescription pain reliever, and ice." (Doc. 33, Fogam Aff. 3 at ¶ 10.) A precautionary x-ray revealed that Sanks "had no broken bones after the altercation." (Id. at ¶ 11.) Fogam further noted that the nasal condition of which Sanks currently complains was caused solely by an injury from a fight with other inmates that had occurred some five months prior to the incident with Williams. (Id. at ¶ 12.) This type of minor injury, when taken into consideration along with the factors discussed above, supports the conclusion that at most this incident was an appropriate use of force not inflicted maliciously or sadistically with the purpose of causing pain or injury to the inmate. See, e.g., Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (use of force deemed *de minimus* where corrections officer twisted inmate's arm behind his back and twisted his ear, causing a bruise lasting for three days).

## III. CONCLUSION

As Sanks has failed to present evidence raising any genuine issues of material fact, and as Williams has presented evidence indicating that his use of force was applied in a good-faith effort to

maintain or restore discipline rather than maliciously and sadistically to cause harm, Williams' motion for summary judgment pursuant to Rule 56(c) should be **GRANTED**.

**SO REPORTED AND RECOMMENDED** this <u>14th</u> day of January, 2009.

<u>G.R. SMITH</u><br>
**UNITED STATES MAGISTRATE JUDGE**<br>
**SOUTHERN DISTRICT OF GEORGIA**